**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| CELGENE CORP., <br><br>     Plaintiff, <br><br> v. <br><br> CELLGENE.COM, an Internet Domain Name, <br><br>     Defendant. | Civil Action No. _____ <br><br><br> <u>JURY TRIAL DEMANDED</u> |

## COMPLAINT

Plaintiff Celgene Corporation ("Celgene" or "Plaintiff"), by counsel, alleges as follows for its Complaint against the Internet domain name cellgene.com (the "Defendant Domain Name"):

## NATURE OF THE SUIT

1.      This is an *in rem* action for cybersquatting under the Federal Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), and trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a).

2.      Celgene is one of the world's leading biopharmaceutical companies, whose mission is to discover, develop and deliver innovative medicines that can improve and extend patients' lives worldwide.  Celgene focuses on, and invests heavily in, the discovery and development of products for the treatment of severe and life-threatening conditions.

3.      Celgene is a world leader in the treatment of many such diseases, including advanced breast cancer, lung cancer, mantle cell lymphoma, multiple melanoma, myelodysplastic syndromes, pancreatic cancer and psoriasis.  Celgene uses its website at Celgene.com to provide information to doctors and patients about its innovative therapies.

© 2019 Wiley Rein LLP.  All rights reserved.

4.     The Defendant Domain Name, Cellgene.com—by adding an additional "L" to Celgene.com—takes advantage of a practice known as typosquatting to misdirect medical professionals and individuals seeking information about Celgene and its FDA-approved therapies to a website that, over time, has featured Celgene's CELGENE and REVLIMID trademarks together with pay-per-click advertisements and paid search results unaffiliated with Celgene and featuring information that is, at best unreliable, and at worst, potentially harmful.

5.     If the infringement of Celgene's valuable rights in its famous and/or distinctive CELGENE mark is allowed to continue, it will cause irreparable harm both to Celgene and the consuming public.  The Court must act to prevent a serial cybersquatter from continuing to profit off Celgene's well-earned goodwill in its CELGENE mark.

## PARTIES

6.     Celgene is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 86 Morris Avenue, Summit, New Jersey 07901.[1]

7.     Defendant cellgene.com is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is registered in the name of "PRIVACYDOTLINK CUSTOMER 3949446" with an address of "PO BOX 30485, SEVEN MILE BEACH GRAND CAYMAN KY1-1202 KY."   A copy of the domain name registration record for cellgene.com is attached hereto as Exhibit A.

8.     On information and belief, "PRIVACYDOTLINK CUSTOMER 3949446" is a proxy for the actual owner of Defendant cellgene.com, Portmedia Holdings, Ltd., of Hong Kong.

---

[1] On January 2, 2019, Celgene entered into a definitive merger agreement with Bristol-Myers Squibb Company (Bristol-Myers Squibb).  The companies expect to close the transaction in the third quarter of 2019, subject to customary closing conditions and regulatory approvals.

## JURISDICTION AND VENUE

9.      This is a civil action for federal cybersquatting in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) and for trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a).

10.     This Court has original jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a).

11.     This Court has *in rem* jurisdiction over the Defendant Domain Name pursuant to 15 U.S.C. § 1125(d)(2)(A).   *In rem* jurisdiction is appropriate under 15 U.S.C. § 1125(d)(2)(A)(i)(I) because the registrant of the Defendant Domain Name is a "privacy service" purportedly located in the Cayman Islands, and therefore Celgene cannot obtain in personam jurisdiction over a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A) and/or Celgene has been unable to find a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1) because, on information and belief, the true owner of the domain name is located in Hong Kong.

12.     Pursuant to 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(aa), Celgene will give notice of the violations of Celgene's rights, and Celgene's intent to proceed *in rem*, to the postal and e-mail addresses set forth in the registration records for the Defendant Domain Name.

13.     The Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(3) and (4), states that the *in rem* action, jurisdiction, and remedies created by the statute are "in addition to any other civil action or remedy otherwise applicable" and "in addition to any other jurisdiction that otherwise exists, whether in rem or in personam."

14.     Venue is proper in this District pursuant to 15 U.S.C. § 1125(d)(2)(C) and 28 U.S.C. § 1391(b)(2) in that the .COM domain name registry operator, VeriSign, Inc., is situated in this judicial district, and the Defendant Domain Name is a .COM domain name.

## THE PROBLEM OF TYPOSQUATTING

15.     Recent studies have shown that over 95% of the 500 most popular sites on the Internet are the subject of "typosquatting"—registration or use of a domain name that represents a typographical error of the legitimate site—and which is typically used to display advertisements related to the legitimate site, to distribute computer viruses or "malware," or to collect visitors' personal information for inappropriate or illegal uses.

16.     Typosquatting harms consumers by causing confusion with the legitimate sites being sought by the consumers and very often results in consumers' computers being infected with computer viruses, "bloatware" or other unwanted software, consumer's personal information being collected and misused, and/or consumers being presented with an endless stream of unwanted advertisements.

17.     Although trademark owners can take certain steps to protect their brands online, such as defensive registration of domain names, this can be both costly and futile.  With up to 37 English letters or numbers in each character of a domain name, the number of typographic combinations can multiply quickly.  For example, there are 333 ways to alter a seven character domain name by a single character.  When accounting for the proliferation of top level domains (TLDs) (e.g., .com, .net, .org, .co, etc.) and the possibility of multiple character typos, the possibilities are endless.  Indeed, a recent estimate found that 21.2 million dot-com domain names, or about 20% of all dot-com domain name registrations, consist of typos.

## CELGENE'S RIGHTS

18.     Celgene is an integrated global biopharmaceutical company engaged primarily in the discovery, development, and commercialization of innovative therapies for the treatment of cancer and inflammatory diseases through next-generation solutions in protein homeostasis, immuno-oncology, epigenetics, immunology and neuro-inflammation.

19.     As one of the largest biotechnology companies in the world, Celgene had 8,852 full time employees as of December 31, 2018, with operations in 35 countries including Hong Kong.

20.     In 2018 alone, approximately 750,000 patients were treated with a Celgene medicine.

21.     Many of Celgene's pharmaceutical products have been approved by the United States Food and Drug Administration for the treatment of cancer, blood disease, and other severe immune and inflammatory conditions.  For example, Celgene's REVLIMID product is currently approved for the treatment of multiple myeloma (MM), in combination with dexamethasone; MM, as maintenance following autologous hematopoietic stem cell transplantation (auto-HSCT); transfusion-dependent anemia due to low- or intermediate-1-risk myelodysplastic syndromes (MDS) associated with a deletion 5q abnormality with or without additional cytogenetic abnormalities; and Mantle cell lymphoma (MCL) whose disease has relapsed or progressed after two prior therapies, one of which included bortezomib.

22.     In addition to its eight marketed products, Celgene has one of the most advanced research engines in the world, sponsoring more than 100 clinical trials examining at least 25 unique compounds.  Celgene also supports more than 500 investigator-initiated trials that use approved therapies or investigational compounds from Celgene.

23.     Celgene adopted its famous CELGENE mark in 1986, when it spun off from Celanese Corporation to become an independent biotechnology company.

24.     Celgene's common stock has been listed on the Nasdaq National Market since 1987.

25.     For more than 30 years, Celgene has provided its goods and services, including its pharmaceutical products, drug delivery compounds, pharmaceutical research, and related goods and services, in connection with its CELGENE mark.

26.     Through Celgene's promotion of its CELGENE mark, the CELGENE mark has become famous and/or distinctive throughout the United States in connection with Celgene's products and services.

27.     The CELGENE mark is entitled to common law trademark rights.

28.     In addition to its common law rights in the CELGENE mark, Celgene is the owner of all right, title, and interest in the following federal trademark registrations, which presently are valid and subsisting in law:

| Reg. No. | Reg. Date | Mark | Goods/Services |
|---|---|---|---|
| 2,379,836 | 08/22/2000 | **CELGENE** | IC 005. US 006 018 044 046 051 052. G & S: pharmaceutical preparations for use in the treatment of immunological, inflammatory and neurological disorders. FIRST USE: 19980929. FIRST USE IN COMMERCE: 19980929 |
| 2,375,599 | 06/15/1999 | Celgene | IC 005. US 006 018 044 046 051 052. G & S: pharmaceutical preparations for use in the treatment of immunological, inflammatory and neurological disorders. FIRST USE: 19980929. FIRST USE IN COMMERCE: 19980929 |

| 2,894,547 | 10/19/2004 |  | IC 041. US 100 101 107. G & S: educational classes and programs in the field of thalidomide and safety issues pertaining to thalidomide, and distribution of written materials therewith. FIRST USE: 19860000. FIRST USE IN COMMERCE: 19860000<br><br>IC 042. US 100 101. G & S: research in the fields of chemicals and pharmaceuticals; scientific research services; research and testing services in the fields of chemicals and pharmaceuticals; research and development of new products for others in the fields of chemical and pharmaceuticals. FIRST USE: 19860000. FIRST USE IN COMMERCE: 19860000 |
|---|---|---|---|
| 2,888,517 | 09/28/2004 | CELGENE | IC 001. US 001 005 006 010 026 046. G & S: biochemical catalysts for use in medical research; biological preparations for medical purposes, namely, for use in the research of immunological, inflammatory and neurological disorders; catalysts for use in the manufacture of pharmaceuticals; chemical preparations, namely, chemical reagents for scientific purposes; [ enzyme preparations for industrial purposes; enzymes for industrial purposes; ] proteins for [ industrial and ] human consumption, namely, animal proteins, genetic testing reagents for scientific laboratory use, namely, DNA probes; [ chemical preparations used to protect crops in the agricultural and horticultural field; ] medicinal and biological preparations for medical laboratory use, namely, preparations for the inhibition of gene expression working at DNA, transcription, RNA or translation processes, and modulation of immune system. FIRST USE: 19861231. FIRST USE IN COMMERCE: 19861231<br><br>IC 005. US 006 018 044 046 051 052. G & S: biological preparations for medical purposes, namely for use in the treatment of immunological, inflammatory and neurological disorders; pharmaceuticals, genomic and biological agents for use in the fields of immunological, inflammatory and neurological disorders for the identification, analysis, |

prevention, detection, diagnosis, prognosis and treatment; biological preparations for use in medicinal tests, inoculations, and treatment of diseases, namely, immunological, inflammatory and neurological disorders and cancer; culture media, namely, tissue culture media and bacteriogical culture media for medical use; medicinal and biological preparations for pharmaceutical and clinical use, namely, preparations for the inhibition of gene expression working at DNA, transcription, RNA or translation processes, and modulation of immune system. FIRST USE: 19861231. FIRST USE IN COMMERCE: 19861231

IC 041. US 100 101 107. G & S: educational classes and programs in the field of thalidomide and safety issues pertaining to thalidomide, and distribution of written materials therewith. FIRST USE: 19861231. FIRST USE IN COMMERCE: 19861231

IC 042. US 100 101. G & S: research in the fields of chemicals and pharmaceuticals; product safety testing in the fields of chemicals and pharmaceuticals; research and development of new products for others in the fields of chemicals and pharmaceuticals; providing clinical laboratory testing services, namely, pharmacogenetic tests, predictive medical tests, personalized medical tests, gene sequencing-based tests and genotyping base on the assessment, development and application of genomic discoveries in the pharmaceutical, informatics and clinical diagnostic industries; providing medical and pharmaceutical research information; scientific research services; design for others in the field of DNA-based assays, DNA sequencing protocols, immunoassay and methods for drug discovery; scientific research, namely, development of pharmaceuticals or diagnostic methods for others [ ; agrochemical product development for others ]. FIRST USE: 19861231. FIRST USE IN COMMERCE: 19861231

| | | | |
|---|---|---|---|
| 3,439,630 | 06/03/2008 | **CELGENE** | IC 035. US 100 101 102. G & S: administration of patient reimbursement programs; administering pharmacy reimbursement programs and services. FIRST USE: 20060101. FIRST USE IN COMMERCE: 20060101 |
| 4,250,217 | 11/27/2012 | Celgene | IC 005. US 006 018 044 046 051 052. G & S: pharmaceutical preparations for use in the treatment of immunological, inflammatory and neurological disorders. FIRST USE: 19980929. FIRST USE IN COMMERCE: 19980929

IC 035. US 100 101 102. G & S: Administration of patient reimbursement programs; administering pharmacy reimbursement programs and services. FIRST USE: 19860000. FIRST USE IN COMMERCE: 19860000

IC 041. US 100 101 107. G & S: educational classes and programs in the field of thalidomide and safety issues pertaining to thalidomide, and distribution of written materials therewith; education services, namely; providing mentoring, tutoring, classes, seminars, and workshops in the fields of highlighting the advancements made in cancer treatments and discussing the importance of continuing research to develop innovative new treatments. FIRST USE: 19860000. FIRST USE IN COMMERCE: 19860000

IC 042. US 100 101. G & S: Development and testing services in the fields of biotechnology, chemistry and pharmaceuticals; providing an interactive web site that enables users to enter, access, track, monitor and generate health and medical information and reports; scientific study and research in the fields of the prevention, treatment and management of illness, health care delivery and the scientific aspects of health care policy, health care cost management and financing as these fields impact on quality of health care; research in the fields of chemicals and pharmaceuticals; research and testing services in the fields of chemicals and pharmaceuticals; research and development of new products for others in the fields of chemicals and pharmaceuticals; providing clinical |

| | | | |
|---|---|---|---|
| | | | laboratory testing services, namely, pharmacogenetic tests, predictive medical tests, personalized medical tests, gene sequencing-based tests and genotyping based on the assessment, development and application of genomic discoveries in the pharmaceutical, informatics and clinical diagnostic industries; scientific research services; scientific research, namely, development of pharmaceuticals or diagnostic methods for others. FIRST USE: 19860000. FIRST USE IN COMMERCE: 19860000<br><br>IC 044. US 100 101. G & S: providing on-line information in the field of diagnosis and treatment of cancer; providing an on-line computer database featuring information relating to diagnosis and treatment of cancer; providing medical and pharmaceutical information services; providing links to web sites of others featuring information about the diagnosis and treatment of cancer. FIRST USE: 20010628. FIRST USE IN COMMERCE: 20010628 |
| 4,684,855 | 02/10/2015 | Celgene | IC 009. US 021 023 026 036 038. G & S: Computer application software for mobile phones, portable media players, handheld computers, namely, software for use in database management, for use in electronic storage of data, for use as a spreadsheet, and for word processing, all for use by patients and health care professionals; downloadable software in the nature of a mobile application for use in database management, for use as a spreadsheet, for word processing, for electronic storage of data, all for use by patients and health care professionals; computer software for use on mobile and cellular phones in the field of health care and dosing of pharmaceuticals for use in accessing databases and websites in order to provide drug dosage and administration information; downloadable electronic software for use on mobile and cellular phones, handheld computers in the field of health care and dosing of pharmaceuticals for use in accessing databases and websites in order to provide drug dosage and administration information. FIRST USE: 20140200. FIRST USE IN COMMERCE: 20140200 |

| 4,684,854 | 02/10/2015 | CELGENE | IC 009, US 021 023 026 036 038. G & S: Computer application software for mobile phones, portable media players, handheld computers, namely, software for use in database management, for use in electronic storage of data, for use as a spreadsheet, and for word processing, all for use by patients and health care professionals; downloadable software in the nature of a mobile application for use in database management, for use as a spreadsheet, for word processing, for electronic storage of data, all for use by patients and health care professionals; computer software for use on mobile and cellular phones in the field of health care and dosing of pharmaceuticals for use in accessing databases and websites in order to provide drug dosage and administration information; downloadable electronic software for use on mobile and cellular phones, handheld computers in the field of health care and dosing of pharmaceuticals for use in accessing databases and websites in order to provide drug dosage and administration information. FIRST USE: 20140200. FIRST USE IN COMMERCE: 20140200 |

29.    A true and correct copy of a representative sample of U.S. trademark registrations owned by Celgene for its CELGENE marks is attached hereto as Exhibit B.

30.    The CELGENE Marks are valid, subsisting, unrevoked and uncancelled.  At least six of the registrations listed above have become incontestable as to all goods and services listed therein and are conclusive evidence of the validity of the registered mark, Celgene's ownership thereof, and of Celgene's exclusive right to use the mark in commerce on or in connection with the goods and services identified in the registration, as provided by Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).

31.    Celgene has also protected its valuable CELGENE marks throughout the world by filing for and obtaining more than 100 international trademark registrations.

32.     Celgene's flagship domain name, Celgene.com, has been at the core of Celgene's marketing and promotional efforts for more than 20 years.

33.     Celgene first registered the domain name Celgene.com on June 27, 1996.

34.     Celgene has used its domain name at Celgene.com and the corresponding website to provide information to the public about Celgene's pharmaceutical products, drugs, research, important safety information, as well as information about job opportunities and investment opportunities with the company.

35.     The Defendant Domain Name represents an unauthorized colorable imitation of the CELGENE mark, which further demonstrates that the CELGENE mark has acquired distinctiveness and was famous and/or distinctive prior to the time of registration of the Defendant Domain Name.

## UNLAWFUL REGISTRATION AND/OR USE
## OF THE DEFENDANT DOMAIN NAME

36.     Celgene has engaged in significant efforts to protect consumers by successfully pursuing administrative actions to obtain the transfer of domain names that infringe upon its CELGENE mark and were registered and/or used in bad faith. *See Celgene Corporation v. Russel, Cloudcare*, D2018-0461 (WIPO May 31, 2018) (directing transfer of cellgenebiotech-bd.com); *Celgene Corporation v. Domain Admin / This Domain is For Sale, Privacy Protected Registrant, Home of Domains*, D2017-1098 (WIPO July 28, 2017) (directing transfer of celgeneempowered.com); *Celgene Corporation v. Name Redacted*, D2016-2151 (WIPO Dec. 9, 2016) (directing transfer of celgenecareers.net); *Celgene Corporation v. Diana Claire*, D2016-0922 (WIPO July 7, 2016) (directing transfer of celgenepharma.com); *Celgene Corporation v. Kerry A. Simpson*, D2016-0757 (WIPO July 7, 2016) (directing transfer of celgenecorp.com) *Celgene Corporation v. Milen Radumilo*, D2016-0018 (WIPO Feb. 22, 2016) (directing transfer

of celgeneriskmanagement.com); *Celgene Corporation v. James Ding*, D2013-0970 (WIPO Sept. 18, 2013) (directing transfer of celgenepharm.com); *Celgene Corporation v. Ourcelgene.com / Milan Kovac*, D2011-2094 (WIPO Jan. 30, 2012) (directing transfer of ourcelgene.com).

37.     Using other counsel, Celgene previously sought to protect consumers through an administrative proceeding to obtain the transfer of the Defendant Domain Name, but was unsuccessful under the limited procedures of the Uniform Domain Name Dispute Resolution Policy.  *See Celgene Corporation v. PRIVACYDOTLINK Customer 3639471 / Domain Administrator, Portmedia Holdings Ltd*, D2018-2673 (WIPO Feb. 11, 2019).  This administrative decision is not entitled to any deference.

38.     The Defendant Domain Name, Cellgene.com, represents a typographical error of Celgene—adding a single letter "l" in the middle of Celgene's famous and/or distinctive CELGENE mark.

39.     Upon information and belief, the Defendant Domain Name was registered for the purpose of obtaining Internet visitors when such visitors make a typographical error on their keyboard when attempting to reach Celgene.com by typing "Cellgene."

40.     Upon information and belief, the registrant of the Defendant Domain Name, Portmedia Holdings, is a serial cybersquatter that makes a habit of registering domain names in bad faith that represent misspellings of famous and/or distinctive marks.

41.     Portmedia Holdings and its affiliates have been found to have engaged in cybersquatting with regard to domain names corresponding to at least five separate third-party trademarks.  *See Etsy, Inc. v. Domain Administrator / Portmedia Holdings Ltd.*, FA1710001753224 (FORUM Nov. 27, 2017) (finding bad faith registration of esty.com); *The Weather Underground, Inc. v. Domain Administrator / PortMedia* Case No. FA1203001433949

(FORUM May 9, 2012) (finding bad faith registration of weatherudnerground.com, weayherunderground.com, and wundreground.com); *Montres Breguet S.A. v. Domain Administrator / PortMedia*, FA1111001417906 (FORUM Feb. 7, 2012 (finding bad faith registration of breuget.com); *Société Nationale des Chemins de Fer Français, SNCF v. Moniker Privacy Services / 3597435 Domain Administrator Port Media Sales*, D2011-0527 (WIPO May 27, 2011) (finding bad faith registration of sncftgv.com); *2018120 Ontario Inc. dba BattleGoat Studios v. Port Media*, D2006-0120 (WIPO May 17, 2006) (finding bad faith registration of supremeruler.com).

42.    In other cases, Portmedia Holdings and its affiliates have surrendered domain names that they registered and/or used in bad faith upon the initiation of an administrative proceeding rather than receiving yet another finding of cybersquatting.  *See, e.g.*, *Capital One Financial Corp. v. PORTMEDIA DOMAINS / PORTMEDIA HOLDINGS LTD*, FA1410001586092 (FORUM Nov. 20, 2014) (agreeing to transfer capitaloneplatinum.com after filing of UDRP complaint); *Officine Panerai A.G. Corp v. PortMedia Holdings Ltd., Portmedia Domains*, D2013-2206 (WIPO Feb. 17, 2014); *Anadarko Petroleum Corporation v. Moniker Privacy Services/ Portmedia, Inc.*, D2013-0687 (WIPO Sep. 5, 2013) (approving voluntary transfer of andarko.com).

43.    Portmedia Holdings and its affiliates are currently the registrants of a number of additional domain names that correspond to famous and/or distinctive marks, including tataaiginsurance.com (Tata AIG General Insurance Company); calbagmetals.com (Calbag Metals Company); and atomicarts.com (Atomic Arts).

44.    Given Portmedia Holdings' use of a proxy service to disguise its registration of the Defendant Domain Name, it most likely is the registrant of many additional domain name that

correspond to famous and/or distinctive marks and, on information and belief, such additional cybersquatted domain names will be disclosed through discovery in this action pursuant to 15 U.S.C. § 1125(d)(1)(B)(i)(VIII).

45.     The Defendant Domain Name has repeatedly been configured to display pay-per-click advertisements relating to Celgene, its successful biopharmaceutical business, and its pharmaceutical products (including Celgene's REVLIMID product) when the visitors were actually seeking Celgene's own website at Celgene.com.

46.     A true and accurate archived screenshot of the Defendant Domain Name's landing page as of May 16, 2016, as captured by DomainTools, is shown below, and includes misuse of Celgene's REVLIMID and CELGENE trademarks.



47.     On September 29, 2015, May 16, 2016, October 21, 2017, and September 25, 2018, the first link displayed at the landing page at the Defendant Domain Name was for "Celgene Jobs."

Other links displayed at those times included "Celgene Corp Stock Price," "Celgene Quote," "Revlimid," and "Celgene."

48.     True and accurate archived screenshots of the Defendant Domain Name's landing page as of September 29, 2015, October 21, 2017, September 25, 2018, as captured by DomainTools, are shown below:







49.    As of November 11, 2018, of the five links displayed at the landing page at the Defendant Domain Name, the first three included unauthorized use of the CELGENE Mark including "Celgene Jobs," "Celgene," and "Celgene Jobs."

50.    A true and accurate printout from the landing page for the Defendant Domain Name as of November 19, 2018 is shown below:



51.    Upon information and belief, the registrant of the Defendant Domain Name received compensation when Internet visitors, who were attempting to reach Celgene.com, clicked on a link provided by Defendant Domain Name to a third-party website.

52.    In addition to including pay-per-click advertisements, the Defendant Domain Name has also been configured at times to display a request for the visitor to update his or her Adobe Flash software.  Such pop-up download requests are commonly associated with distribution of malware.  Upon information and belief, a user visiting the Defendant Domain Name and clicking on the request could unwittingly download malware, spyware, or other software that would intentionally harm the visitor's computer.

53.    The use of the CELGENE and REVLIMID marks within the Defendant Domain Name and/or associated websites is without authorization from Celgene.

54.    Upon information and belief, the Defendant Domain Name does not reflect the legal name of the registrant of the Defendant Domain Name.

55. Upon information and belief, the registrant of the Defendant Domain Name has not engaged in bona fide noncommercial or fair use of the CELGENE mark in a website accessible under the Defendant Domain Name.

56. The websites displayed by the registrant of the Defendant Domain Name are likely to be confused with Celgene's legitimate online location at Celgene.com.

57. Upon information and belief, the registrant of the Defendant Domain Name registered the Defendant Domain Name with intent to divert consumers away from Celgene's online location at Celgene.com, for commercial gain, by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of the Defendant Domain Name and the sites displayed through use of the Defendant Domain Name.

58. On or around September 11, 2018, the registrant of the Defendant Domain Name offered to sell the domain name for $7,500 despite the fact that the registrant had not used, and had no intent to use, the domain name in the bona fide offering of any goods or services.

59. Upon information and belief, the registrant of the Defendant Domain Name provided material and misleading false contact information when applying for and maintaining the registration of the Defendant Domain Name in that the person or entity identified as the registrant of the Defendant Domain Name is not the true owner of the domain name. Upon information and belief, the registrant of the Defendant Domain Name uses a service that replaces the domain name owner's contact information with the name "PRIVACYDOTLINK CUSTOMER 3949446" and thereby conceals the identity of the true owner of the domain name.

## COUNT ONE:
### Violation of the Federal Anti-cybersquatting Consumer Protection Act

60. Celgene repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

61.    Celgene's federally-registered CELGENE mark is famous and/or distinctive and was famous and/or distinctive prior to the time of registration of the Defendant Domain Name.

62.    The aforesaid acts by the registrant of the Defendant Domain Name constitute registration, maintenance, trafficking in, or use of a domain name that is confusingly similar to Celgene's CELGENE mark, with bad faith intent to profit therefrom.

63.    In light of the registrant's concealment of the identity of the true owner of the Defendant Domain Name, Celgene is not able to obtain *in personam* jurisdiction over the registrant of the Defendant Domain Name or any other person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A).

64.    On information and belief, the actual registrant of the Defendant Domain Name is based in Hong Kong, and therefore, Celgene, despite its due diligence, has been unable to find a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A).

65.    The aforesaid acts by the registrant of the Defendant Domain Name constitute unlawful cyberpiracy in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1).

66.    The aforesaid acts have caused, and are causing, great and irreparable harm to Celgene and the public. The harm to Celgene includes harm to the value and goodwill associated with the CELGENE mark that money cannot compensate. Unless permanently restrained and enjoined by this Court, said irreparable harm will continue. Thus, pursuant to 15 U.S.C. § 1125(d)(2)(D)(i), Celgene is entitled to an order transferring the Defendant Domain Name registration to Celgene.

## COUNT TWO:
## In-Rem Trademark Infringement

67.     Celgene repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

68.     At the time the Defendant Domain Name was registered and/or used, Celgene possessed valid federal trademark rights in the famous and/or distinctive CELGENE mark.

69.     In light of the registrant's concealment of the identities of the true owner of the Defendant Domain Name, Celgene is not able to obtain *in personam* jurisdiction over the registrant of the Defendant Domain Name or any other person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A).

70.     On information and belief, the actual registrant of the Defendant Domain Name is based in Hong Kong, and therefore, Celgene, despite its due diligence, has been unable to find a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A).

71.     The registration and/or use of the Defendant Domain Name is a use in commerce.

72.     The registration and/or use of the Defendant Domain Name affects Celgene's ability to use its CELGENE mark in commerce.

73.     The Defendant Domain Name and its registrant have no valid rights in the CELGENE mark.

74.     At the time the Defendant Domain Name was registered and/or used, the Defendant Domain Name and its respective registrant were on actual and/or constructive notice, pursuant to Section 22 of the Lanham Act, 15 U.S.C. § 1072, of the existence of Celgene's superior rights in its CELGENE mark by reason of the existence, at that time, of Celgene's federal trademark rights.

75.     Use of the CELGENE mark by the Defendant Domain Name and its registrant is without the permission or authorization of Celgene.

76.    The aforesaid registration and/or use of the Defendant Domain Name has caused and is likely to continue to cause confusion, mistake and/or deception among consumers and the public, leading the public falsely to believe that the Defendant Domain Name and/or websites provided thereunder are those of, are sponsored or approved by, or are in some way connected with Celgene.

77.    The aforesaid registration and/or use of the Defendant Domain Name constitutes direct infringement of Celgene's trademark rights in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

78.    The aforesaid acts have caused, and are causing, great and irreparable harm to Celgene and the public. The harm to Celgene includes harm to the value and goodwill associated with the CELGENE mark that money cannot compensate. Unless permanently restrained and enjoined by this Court, said irreparable harm will continue.

## PRAYER FOR RELIEF

WHEREFORE, Celgene respectfully requests of this Court:

1.    That judgment be entered in favor of Celgene on its claims of cybersquatting and trademark infringement.

2.    That the Court order the Defendant Domain Name be transferred to Celgene through transfer by VeriSign, Inc. of the Defendant Domain Name from the current domain name registrar to Celgene's domain name registrar of choice and by such registrar's change of the registrant to Celgene.

3.    That any other domain names registered by the registrant of the Defendant Domain Name that resemble or include the CELGENE mark be transferred to Celgene.

4.    That the Court order an award of costs and reasonable attorney's fees incurred by Celgene in connection with this action pursuant to 15 U.S.C. § 1117(a); and

5.    That the Court order an award to Celgene of such other and further relief as the Court may deem just and proper.

Jury Trial Demanded.


Dated: May 29, 2019       By:    _____/s/ Attison L. Barnes, III /s/_____
                                  Attison L. Barnes, III (VA Bar No. 30458)
                                  David E. Weslow (*for pro hac admission*)
                                  Ari S. Meltzer (*for pro hac admission*)
                                  Adrienne J. Kosak (VA Bar No. 78631)
                                  WILEY REIN LLP
                                  1776 K St. NW
                                  Washington, DC 20006
                                  (202) 719-7000 (phone)
                                  abarnes@wileyrein.com

                                  *Counsel for Plaintiff*
                                  *Celgene Corporation*